# Statement

Oakbrook Woods Condo Assoc.
c/o BP Management Services Inc
411 South State Street Unit B
IL 61008

| Date |
|---|
| 11/15/2018 |

**To:**
Michael Shere
1680 W Chrysler Dr
Belvidere IL 61008

| Amount Due | Amount Enc. |
|---|---|
| $7,456.31 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 09/30/2018 | Balance forward | | 7,161.31 |
| 10/01/2018 | INV #1025. Due 10/01/2018. | 135.00 | 7,296.31 |
| 10/17/2018 | INV #1151. Due 10/17/2018. Late fee - October | 25.00 | 7,321.31 |
| 10/17/2018 | INV #1152. Due 10/17/2018. | 0.00 | 7,321.31 |
| 11/01/2018 | INV #1106. Due 11/01/2018. | 135.00 | 7,456.31 |
| 11-20-18 | BK Legal Fee | 781.00 | 8,237.31 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 160.00 | 160.00 | 135.00 | 7,001.31 | |

Oakbrook Woods Condo Assoc.
c/o BP Management Services Inc
411 South State Street Unit B
IL 61008

# Statement

| Date |
|---|
| 10/30/2018 |

**To:**
Michael Shere
1680 W Chrysler Dr
Belvidere IL 61008

| | Amount Due | Amount Enc. |
|---|---|---|
| | $7,321.31 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 02/01/2017 | INV #800. Due 02/01/2017. | 120.00 | 4,080.00 |
| 03/01/2017 | INV #801. Due 03/01/2017. | 120.00 | 4,200.00 |
| 04/01/2017 | INV #802. Due 04/01/2017. | 120.00 | 4,320.00 |
| 05/01/2017 | INV #803. Due 05/01/2017. | 120.00 | 4,440.00 |
| 06/01/2017 | INV #804. Due 06/01/2017. | 120.00 | 4,560.00 |
| 07/01/2017 | INV #805. Due 07/01/2017. | 120.00 | 4,680.00 |
| 08/01/2017 | INV #806. Due 08/01/2017. | 120.00 | 4,800.00 |
| 09/01/2017 | INV #807. Due 09/01/2017. | 120.00 | 4,920.00 |
| 10/01/2017 | INV #750. Due 10/01/2017. | 120.00 | 5,040.00 |
| 11/01/2017 | INV #31. Due 11/01/2017. | 120.00 | 5,160.00 |
| 11/15/2017 | INV #417. Due 11/15/2017. November late fee | 25.00 | 5,185.00 |
| 12/01/2017 | INV #126. Due 12/01/2017. | 120.00 | 5,305.00 |
| 12/15/2017 | INV #418. Due 12/15/2017. December late fee | 25.00 | 5,330.00 |
| 01/01/2018 | INV #229. Due 01/01/2018. | 120.00 | 5,450.00 |
| 01/15/2018 | INV #419. Due 01/15/2018. January late fee | 25.00 | 5,475.00 |
| 02/01/2018 | INV #298. Due 02/01/2018. | 120.00 | 5,595.00 |
| 02/15/2018 | INV #420. Due 02/15/2018. February late fee | 25.00 | 5,620.00 |
| 03/01/2018 | INV #813. Due 03/01/2018. | 120.00 | 5,740.00 |
| 03/15/2018 | INV #421. Due 03/15/2018. March late fee | 25.00 | 5,765.00 |
| 03/15/2018 | INV #422. Due 03/15/2018. Legal Turn Over Fee | 150.00 | 5,915.00 |
| 04/01/2018 | INV #465. Due 04/01/2018. | 120.00 | 6,035.00 |
| 04/16/2018 | INV #661. Due 04/16/2018. Late fee April | 25.00 | 6,060.00 |
| 05/01/2018 | INV #551. Due 05/01/2018. | 120.00 | 6,180.00 |
| 05/31/2018 | INV #665. Due 05/31/2018. May late fee | 25.00 | 6,205.00 |
| 06/01/2018 | INV #621. Due 06/01/2018. | 120.00 | 6,325.00 |
| 06/30/2018 | INV #740. Due 06/30/2018. June late fee | 25.00 | 6,350.00 |
| 07/01/2018 | INV #698. Due 07/01/2018. | 135.00 | 6,485.00 |
| 07/18/2018 | INV #822. Due 07/18/2018. Turn over legal fee | 100.00 | 6,585.00 |
| 07/31/2018 | INV #915. Due 07/31/2018. July late fee | 25.00 | 6,610.00 |
| 08/01/2018 | INV #853. Due 08/01/2018. | 135.00 | 6,745.00 |
| 08/02/2018 | INV #912. Due 08/02/2018. Invoice 90171 | 231.31 | 6,976.31 |
| 08/16/2018 | INV #991. Due 08/16/2018. August late fee | 25.00 | 7,001.31 |
| 09/01/2018 | INV #950. Due 09/01/2018. | 135.00 | 7,136.31 |
| 09/17/2018 | INV #1070. Due 09/17/2018. September late fee | 25.00 | 7,161.31 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 160.00 | 160.00 | 391.31 | 6,610.00 | $7,321.31 |

Oakbrook Woods Condo Assoc.
c/o BP Management Services Inc
411 South State Street Unit B
IL 61008

# Statement

| Date |
|---|
| 10/30/2018 |

**To:**
Michael Shere
1680 W Chrysler Dr
Belvidere IL 61008

| Amount Due | Amount Enc. |
|---|---|
| $7,321.31 | |

| Date | Transaction | Amount | Balance |
|---|---|---:|---:|
| 05/31/2013 | Balance forward | | 0.00 |
| 05/01/2014 | INV #767. Due 05/01/2014. | 120.00 | 120.00 |
| 06/01/2014 | INV #768. Due 06/01/2014. | 120.00 | 240.00 |
| 07/01/2014 | INV #769. Due 07/01/2014. | 120.00 | 360.00 |
| 08/01/2014 | INV #770. Due 08/01/2014. | 120.00 | 480.00 |
| 09/01/2014 | INV #771. Due 09/01/2014. | 120.00 | 600.00 |
| 10/01/2014 | INV #772. Due 10/01/2014. | 120.00 | 720.00 |
| 11/01/2014 | INV #773. Due 11/01/2014. | 120.00 | 840.00 |
| 12/01/2014 | INV #774. Due 12/01/2014. | 120.00 | 960.00 |
| 01/01/2015 | INV #775. Due 01/01/2015. | 120.00 | 1,080.00 |
| 02/01/2015 | INV #776. Due 02/01/2015. | 120.00 | 1,200.00 |
| 03/01/2015 | INV #777. Due 03/01/2015. | 120.00 | 1,320.00 |
| 04/01/2015 | INV #778. Due 04/01/2015. | 120.00 | 1,440.00 |
| 05/01/2015 | INV #779. Due 05/01/2015. | 120.00 | 1,560.00 |
| 06/01/2015 | INV #780. Due 06/01/2015. | 120.00 | 1,680.00 |
| 07/01/2015 | INV #781. Due 07/01/2015. | 120.00 | 1,800.00 |
| 08/01/2015 | INV #782. Due 08/01/2015. | 120.00 | 1,920.00 |
| 09/01/2015 | INV #783. Due 09/01/2015. | 120.00 | 2,040.00 |
| 10/01/2015 | INV #784. Due 10/01/2015. | 120.00 | 2,160.00 |
| 11/01/2015 | INV #785. Due 11/01/2015. | 120.00 | 2,280.00 |
| 12/01/2015 | INV #786. Due 12/01/2015. | 120.00 | 2,400.00 |
| 01/01/2016 | INV #787. Due 01/01/2016. | 120.00 | 2,520.00 |
| 02/01/2016 | INV #788. Due 02/01/2016. | 120.00 | 2,640.00 |
| 03/01/2016 | INV #789. Due 03/01/2016. | 120.00 | 2,760.00 |
| 04/01/2016 | INV #790. Due 04/01/2016. | 120.00 | 2,880.00 |
| 05/01/2016 | INV #791. Due 05/01/2016. | 120.00 | 3,000.00 |
| 06/01/2016 | INV #792. Due 06/01/2016. | 120.00 | 3,120.00 |
| 07/01/2016 | INV #793. Due 07/01/2016. | 120.00 | 3,240.00 |
| 08/01/2016 | INV #794. Due 08/01/2016. | 120.00 | 3,360.00 |
| 09/01/2016 | INV #795. Due 09/01/2016. | 120.00 | 3,480.00 |
| 10/01/2016 | INV #796. Due 10/01/2016. | 120.00 | 3,600.00 |
| 11/01/2016 | INV #797. Due 11/01/2016. | 120.00 | 3,720.00 |
| 12/01/2016 | INV #798. Due 12/01/2016. | 120.00 | 3,840.00 |
| 01/01/2017 | INV #799. Due 01/01/2017. | 120.00 | 3,960.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---:|---:|---:|---:|---:|---:|
| 0.00 | 160.00 | 160.00 | 391.31 | 6,610.00 | $7,321.31 |

01 R09748

FILED FOR RECORD
BOONE COUNTY, IL.

2001 SEP 21 PM 3: 18

*[signature]*
BOONE COUNTY RECORDER

## DECLARATION OF CONDOMINIUM OWNERSHIP

## FOR

## OAKBROOK WOODS CONDOMINIUMS

This document was prepared by:
and when recorded return to:

Hallmark Homes, L.L.C.
6755 Weaver Road
Rockford, IL 61114
(815) 877-1537

within 20 days after such notice and such election shall be held within 30 days after filing the petition; for purposes of this subsection, a Board Member's immediate family means the Board Member's spouse, parents, and children.

Section 12. The Board of Directors may establish and maintain a system of master metering of public utility services and collect payments in connection therewith, subject to the requirements of the Tenant Utility Payment Disclosure Act.

## ARTICLE III

### Assessments

Section 1. Each calendar year the Board shall prepare a proposed annual budget, and shall estimate the total amount necessary to pay the cost of wages, materials, insurance, services and supplies which will be required during the ensuing calendar year for the rendering of all services, together with a reasonable amount considered by the Board to be necessary for a reserve for contingencies and replacements.

At least 30 days prior to the meeting of the Board at which it proposes to adopt said budget, the Board shall provide each Unit Owner with a copy of the proposed budget together with an indication of which portions are intended for reserves, capital expenditures or repairs or payment of real estate taxes. The annual budget shall also take into account the estimated net available cash income for the year from the operation or use of the Common Elements. Said "estimated cash requirement" shall be assessed to the Unit Owners according to each Unit Owner's percentage of ownership in the Common elements as set forth in Exhibit "C" attached to the Declaration. Each Unit Owner shall pay the cost of operating, using and maintaining his Limited Common Elements, as more fully described in the Declaration. On or before the first of each and every month following the adoption and effective date of the budget each Unit Owner shall be obligated to pay to the Board or as it may direct, 1/12 of the assessment made pursuant to this paragraph. The Board shall also annually supply to all Unit Owners an itemized accounting of the common expenses for the preceding calendar year actually incurred and paid, together with an indication of which portions were for reserves, capital expenditures or repairs or payment of real estate taxes and with a tabulation of the amounts collected pursuant to the budget or assessment, and showing the net excess or deficit of income over expenditures plus reserves. Any amount accumulated in excess of the amount required for actual expenses and reserves shall be credited toward the budget for the next year, and any net shortage shall be charged in a lump sum to each Unit Owner according to his percentage of ownership in the Common Elements.

Section 2. The Board shall build up and maintain a reasonable reserve for contingencies and replacements. Extraordinary expenditures not originally included in the annual estimate which may become necessary during the year shall be charged first against such reserve. If said "estimated case requirement" proves inadequate for any reason, including non-payment of any Unit Owner's assessment, the Board may at any time levy a further assessment, which shall be assessed to the Unit Owners according to each Unit Owner's percentage ownership in the Common Elements. The Board shall serve notice of such further assessments on all Unit Owners by a statement in writing giving the amount and reasons therefor, and such further assessment shall become effective with the next monthly maintenance payment which is due more than 10 days after the delivery or mailing of such notice of further assessment. All Unit Owners shall be obligated to pay the adjusted monthly amount.

Section 3. When the first Board elected hereunder takes office, it shall determine the "estimated cash requirement," as hereinabove defined, for the period commencing 30 days after said election and ending on December 31 of the calendar year in which said election occurs. Assessments shall be levied against the Unit Owners during said period as provided in Section 1 of this Article.

Section 4. The failure or delay of the Board to prepare or serve the annual or adjusted estimate on the Unit Owner shall not constitute a waiver or release in any manner of such Unit Owner's obligation to pay the maintenance costs and necessary reserves, as herein provided, whenever they shall be determined, and in the absence of any annual estimate or adjusted estimate, the Unit Owner shall continue to pay the monthly maintenance charge at the then existing monthly rate established for the previous period until the next monthly maintenance payment which is due more than 10 days after such new annual or adjusted estimate shall have been mailed or delivered.

Section 5. The Board shall keep full and correct books of account in chronological order of the receipts and expenditures affecting the Common Elements, specifying and itemizing the maintenance and repair expenses of the Common Elements and any other expenses incurred, which books of account shall be audited at least annually by a certified public accountant. The Board shall keep a separate account for each Unit Owner showing his assessment and payments. Such records and vouchers authorizing the payments shall be available for inspection by any Unit Owner or any representative of a Unit Owner duly authorized in writing, or any mortgage holder at such reasonable time or times during normal business hours as may be requested by the Unit Owner. Upon 10 days' notice to the Board and payment of a reasonable fee, any Unit Owner shall be furnished a statement of his account setting forth the amount of any unpaid assessments or other charges due and owing from such owner.

Section 6. If a Unit Owner is in default in the monthly payment of the aforesaid charges or assessments for 30 days, the members of the Board may bring suit on behalf of themselves and all Unit Owners to enforce collection thereof, to enforce the possession remedy provided by law and by the Declaration, or to foreclose the lien therefor. There shall be added to the amount due the costs of suit, and other fees and expenses together with interest and attorneys' fees. To the extent permitted by law, the amount of any delinquent and unpaid charges or assessments and interest, costs and fees as above provided shall be a lien or charge against the Unit Ownership of the Unit Owner involved, when payable, and may be foreclosed by an action brought in the name of the Board as in the case of foreclosure of liens against real estate. Said lien shall take effect and be in force as provided in the Condominium Property Act of Illinois.

Section 7. No Unit Owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Elements or abandonment of his Unit.

Section 8. Until the first meeting of the Unit Owners is held and the amount of the monthly assessments to be paid by the Unit Owners is determined by the Board, each Unit Owner (including the Developer with respect to any Units owned by the Developer) shall pay in advance on the first day of each month to the managing agent of the Property, or as otherwise directed in writing by the Developer, for use in the operation of the Property an amount equal to the product obtained by multiplying the particular Unit Owner's percentage interest in the Common Elements times the cost of operating the Property for such month, as estimated by the Developer. Such operating costs shall not include capital expenditures, reserves for contingencies or replacements, prepaid items, or inventory items to the extent attributable to subsequent periods. If the Developer shall underestimate or overestimate such operating expenses in any month, appropriate adjustments may be made in the estimate for the succeeding month or months; provided, however, that the portion of any excess payment made by the Developer as a result of any overestimate of such expenses shall be refunded to the Developer or shall be otherwise credited to the Developer in such manner as it may determine.

Section 9. Any first mortgage or first trust deed made, owned or held by a bank, savings and loan association or insurance company, and recorded prior to the recording or mailing of a notice by the Board of the amount owing by a Unit Owner who has refused or failed to pay his share of the monthly assessment when due shall be superior to the lien of such unpaid Common Expenses set forth in said notice and to all assessments for Common Expenses which become due and are unpaid subsequent to the date of recording of such first mortgage or first trust deed; provided, however, that after written notice to the holder of any such mortgage or trust deed, such mortgage or trust deed shall be subject to the lien of unpaid Common Expenses which are due and payable subsequent to the date when such holder takes possession of the Unit, accepts a conveyance of such Unit, or has a receiver appointed in a suit to foreclose the lien of such mortgage or trust deed.

Section 10. At the time the sale of each Unit is closed, the new Unit Owner shall pay to the managing agent, or as otherwise directed by the Board, the first monthly assessment for his percentage of the Common Expenses, and an amount equal to three times his first full monthly assessment which amount shall be used and applied as an operating reserve for expenses and start-up costs. The amounts so paid by Unit Owners for operating reserves and start-up costs, together with amounts paid from time to time by Unit Owners for monthly assessments and supplemental assessments shall be held and used and applied from time to time for the payment of expenses as needed. The amounts so paid by Unit Owners for operating reserves and start-up costs shall be transferred to the Association for deposit into a segregated fund when control of the Association is transferred to the Unit Owners. All such amounts on hand shall be deemed to be part of the Common Elements and owned by the Unit Owners in accordance with their respective percentage of ownership of the Common Elements. The Developer may not use

these amounts to defray any of its expenses, reserve contributions, or construction costs or to make up any budget deficits while it is in control of the Association.

Section 11. The Association shall have no authority to forbear the payment of assessments by any Unit Owner.

Section 12. Notwithstanding any provision to the contrary in either the Declaration or these Bylaws:

(a) Each unit owner shall receive notice, in the same manner as provided for membership meetings, of any meeting of the Board of Managers concerning the adoption of the proposed annual budget and regular assessments or to adopt a separate special assessment;

(b) If an adopted budget or any separate assessment adopted by the Board would result in the sum of all regular and separate assessments payable in the current fiscal year exceeding 115% of the sum of all regular and separate assessments payable during the preceding fiscal year, the Board of Managers, upon written petition by Unit Owners with 20% of the votes of the Association delivered to the Board within 14 days of the Board action, shall call a meeting of the Unit Owners within 30 days of the date of delivery of the petition to consider the budget or separate assessment. Unless a majority of the total votes of the Unit Owners are cast at the meeting to reject the budget or separate assessment, it is ratified;

(c) Any common expenses not set forth in the budget or any increase in assessments over the amount adopted in the budget shall be separately assessed against all Unit Owners;

(d) Separate assessments for expenditures relating to emergencies or mandated by law may be adopted by the Board of Managers without being subject to Unit Owner approval or the provisions of Section 12(b) above or Section 12(e) below. Emergency means an immediate danger to the structural integrity of the common elements or to the life, health, safety or property of the Unit Owners;

(e) Assessments for additions and alterations to the common elements or to Association-owned property not included in the adopted annual budget, shall be separately assessed and are subject to approval of 66 2/3% of the total votes of all of the Unit Owners; and

(f) The board of managers may adopt separate assessments payable over more than one fiscal year. With respect to multi-year assessments that are not emergencies and that are not for the additions and alterations to the common elements or to association-owned property, the entire amount of the multi-year assessment shall be deemed considered and authorized in the first fiscal year in which the assessment is approved.

ARTICLE IV

General Provisions

Section 1. The use, maintenance and operation of the Common Elements shall not be obstructed, damaged or unreasonably interfered with by any Unit Owner, nor shall anything be stored in the Common Elements without the prior written consent of the Board except as hereinafter expressly provided. Each Unit Owner shall be obligated to maintain and keep in good order and repair his own Unit and his Limited Common Elements and his windows and doors.

Section 2. Nothing shall be done or kept in any Unit, Limited Common Elements or in the Common Elements which will increase the rate or insurance on the Building, or contents thereof, applicable for residential use, without the prior written consent of the Board. No Unit Owner shall permit anything to be done or kept in his Unit, Limited Common Elements or in the Common Elements which will result in the cancellation of insurance on

30